<u>State of Maryland v. Karon Sayles</u>, No. 15, September Term, 2020; <u>State of Maryland v. Bobby Jamar Johnson</u>, No. 16, September Term, 2020; <u>State of Maryland v. Dalik Daniel Oxely</u>, No. 17, September Term, 2020

**JURY NULLIFICATION – JURY QUESTIONS – SUPPLEMENTAL JURY INSTRUCTIONS – PREJUDICE –** Court of Appeals held that, despite circumstance that jury nullification sometimes occurs, jury nullification is not authorized in Maryland and jury does not have right to engage in nullification. No case, statute, or rule in Maryland authorizes or gives juries right to engage in jury nullification, *i.e.*, there is no grant of authority permitting jury to utilize nullification.

Court of Appeals reiterated that Maryland case law makes clear that it is improper for attorney to argue jury nullification to jury, and that jury instructions on law are binding and trial courts must advise juries as much. On request, during *voir dire*, trial court must ask whether any prospective jurors are unwilling or unable to comply with jury instructions concerning certain fundamental principles. In addition, legally inconsistent verdicts and verdict resulting from jury nullification are comparable because both involve circumstances in which jury acts contrary to trial court's instructions as to proper application of law and both are impermissible. Court of Appeals held that, taken together, these principles of law lead to conclusion that jury nullification is not authorized in Maryland and jury may be so advised. Although jury may have inherent ability to nullify and Court recognized that jury nullification occurs, jury does not have right to engage in jury nullification. Rather, in Maryland, jury is required to determine facts and render verdict based on instructions provided to it by trial court.

Court of Appeals held that, in this case, trial court did not abuse its discretion when, in response to jury notes about jury nullification, it instructed jury, among other things, that jury nullification is juror's knowing and deliberate rejection of evidence, it could not engage in jury nullification, jury nullification is contrary to law and engaging in it would violate jury's oath, and jury nullification would violate court's order and it is law of Maryland that jury must apply law as instructed by court. Court of Appeals held that trial court's instructions were neither legally incorrect nor prejudicial.

Circuit Court for Montgomery County
Case Nos. 132381C, 132377C, & 132379C

Argued: December 4, 2020

IN THE COURT OF APPEALS

OF MARYLAND

Nos. 15, 16, & 17

September Term, 2020

_____

STATE OF MARYLAND
v.
KARON SAYLES

_____

STATE OF MARYLAND
v.
BOBBY JAMAR JOHNSON

_____

STATE OF MARYLAND
v.
DALIK DANIEL OXELY

_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Opinion by Watts, J.
Hotten, J., dissents.

_____

Filed: January 29, 2021

Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Anecdotally speaking, jury nullification occurs where individual jurors, or the jury as a whole, in a criminal case may believe a defendant to be guilty, but nevertheless choose not to convict because the jury considers the law involved in the case to be unjust or wrong or perhaps the jury simply does not want to apply the law. Legally speaking, "jury nullification" has been defined as:

> A jury's knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness.

*Jury Nullification*, Black's Law Dictionary (11th ed. 2019).

This case raises as a matter of first impression the question of whether a jury in Maryland has the authority to engage in jury nullification and whether, in responding to questions from a jury, the trial court correctly instructed the jury, among other things, that it was not authorized to engage in nullification and that doing so would violate the jury's oath. In this case, Karon Sayles, Bobby Jamar Johnson, and Dalik Daniel Oxely, Respondents, were each charged with multiple offenses related to a home invasion, armed robbery, and kidnapping that occurred over the course of two days on August 1 and 2, 2017, in Silver Spring, Maryland. At a joint trial in the Circuit Court for Montgomery County, during jury deliberations, the jury sent three notes inquiring about jury nullification. In the first note, the jury asked whether it had the right to use jury nullification. The circuit court provided a written response advising that the jury's verdict must be based solely on the evidence, that the choices were guilty or not guilty, and that the jury should reread the court's instructions.

Later, in a second more insistent note, a juror asked that the question about the right to use jury nullification be answered with a yes or no response. In answer, the circuit court orally instructed the jury, among other things, that: jury nullification is "a juror's knowing and deliberate rejection of the evidence or refusal to apply the law"; a jury cannot engage in jury nullification; the jury was to decide the case based on the evidence as it found it and apply the law as given to it by the court; and jury nullification should not be a consideration.

In a third note that was "[f]rom juror #112[,]" the juror directly asked whether any law in Maryland prohibited jury nullification. In response, the circuit court orally instructed the jury as a whole, among other things, that the jury could not engage in jury nullification, jury nullification is improper, contrary to the law, and would violate the jury's oath, and jury nullification would violate the court's order and that the jury must apply the law as explained by the court. At the end of the next day, the jury returned verdicts finding Respondents guilty of numerous crimes, including home invasion, armed robbery, and kidnapping.

Respondents each appealed to the Court of Special Appeals, which, in a reported opinion, reversed the circuit court's judgment and remanded the case to that court for a new trial. See Sayles v. State, 245 Md. App. 128, 167, 226 A.3d 349, 372 (2020). In doing so, the Court of Special Appeals concluded that the power of jury nullification exists and held that the circuit court's instructions in response to the second and third jury notes concerning jury nullification "were legally incorrect and prejudicial." Id. at 151, 144, 226 A.3d at 362, 359. The State filed petitions for writs of *certiorari*, which we granted. See State v. Sayles, 469 Md. 659, 232 A.3d 259 (2020); State v. Johnson, 469 Md. 658, 232

A.3d 258 (2020); State v. Oxely, 469 Md. 658, 232 A.3d 258 (2020).

Against this backdrop, we must decide whether the Court of Special Appeals was incorrect in concluding that a jury has the power to engage in jury nullification and whether the circuit court abused its discretion in instructing the jury that it could not engage in jury nullification. Basically, we must determine whether jury nullification is authorized in Maryland, *i.e.*, whether juries have the right to engage in jury nullification. We must also decide whether the circuit court's instructions were incorrect and prejudiced Respondents, as the Court of Special Appeals concluded.

We hold that, despite the circumstance that jury nullification occurs, jury nullification is not authorized in Maryland and a jury does not have a right to engage in jury nullification. No case, statute, or rule in Maryland authorizes or gives juries the right to engage in jury nullification, *i.e.*, there is no grant of authority permitting a jury to nullify. Rather, Maryland case law makes clear that it is improper for an attorney to argue jury nullification to a jury, and that jury instructions on the law are binding and trial courts must advise juries as much. On request, during *voir dire*, a trial court must ask whether any prospective jurors are unwilling or unable to comply with the jury instructions on certain fundamental principles. In addition, a verdict resulting from jury nullification is analogous to the return of legally inconsistent verdicts because in both instances a jury acts contrary to a trial court's instructions as to the proper application of the law and both occurrences are impermissible. Taken together, these principles lead us to conclude that jury nullification is not authorized in Maryland.

Stated otherwise, although a jury may have the ability to nullify, and we recognize

- 3 -

that jury nullification occurs, a jury does not have the right to engage in jury nullification. As such, for the reasons explained herein, we hold that, in this case, the circuit court did not abuse its discretion when, in response to the second and third jury notes about jury nullification, it instructed the jury, among other things, that: jury nullification is a juror's knowing and deliberate rejection of the evidence or refusal to apply the law; the jury could not engage in jury nullification; jury nullification is contrary to the law and engaging in it would violate the jury's oath; jury nullification would violate the court's order; and, in Maryland, the jury must apply the law as instructed by the court. The circuit court's instructions were neither legally incorrect nor prejudicial. Accordingly, we reverse the judgment of the Court of Special Appeals and remand the case to that Court for consideration of the remaining issues not addressed on appeal.[1]

## BACKGROUND

On September 7, 2017, Respondents were each charged with forty-two offenses, including home invasion, armed robbery, kidnapping, first- and second-degree assault,

---

[1]In its opinion, to provide guidance upon retrial, the Court of Special Appeals addressed whether the circuit court was correct in denying a motion to suppress two photo array identifications filed by Sayles, and held that the circuit court did not err. See Sayles, 245 Md. App. at 162, 167, 226 A.3d at 369, 372. There is no issue before this Court with respect to the motion to suppress.

In the Court of Special Appeals, Respondents, however, collectively raised a total of six issues. See id. at 136, 226 A.3d at 354. Two of the six issues pertained to jury nullification and a third issue pertained to the photo array identifications. The remaining three issues—whether the circuit court abused its discretion in denying a motion to recuse the trial judge and in denying a motion for a mistrial and whether all but one conviction and sentence for conspiracy should be vacated—were not addressed by the Court of Special Appeals. We, therefore, reverse the judgment of the Court of Special Appeals and remand the case to that Court for consideration of the outstanding issues.

- 4 -

false imprisonment, burglary, motor vehicle theft, fourth-degree sexual offense, and multiple conspiracy offenses. From August 20 to 31, 2018, the Circuit Court for Montgomery County conducted a joint jury trial of Respondents. On August 31, 2018, the jury found Sayles and Oxely each guilty of home invasion, five counts of armed robbery, kidnapping, second-degree burglary, first-degree assault, five counts of second-degree assault, five counts of false imprisonment, motor vehicle theft, and related conspiracies. The jury found Johnson guilty of home invasion, five counts of armed robbery, kidnapping, second-degree burglary, five counts of second-degree assault, five counts of false imprisonment, motor vehicle theft, and related conspiracies. The jury found Johnson not guilty of first-degree assault and conspiracy to commit first-degree assault.[2] On November 20, 2018, Sayles was sentenced to a total of forty-two years' imprisonment, Johnson was sentenced to a total of forty years' imprisonment, and Oxely was sentenced to a total of fifty years' imprisonment.

**The Home Invasion and Armed Robbery**

Because providing the details of the underlying crimes is not necessary for resolution of the questions presented, we give only a brief overview of the facts for context. On the night of August 1, 2017, Respondents, together with two other individuals, Younus Muayad Alaameri and Edwin Ajeo, disguised themselves as maintenance workers and gained entry into a two-bedroom apartment in Silver Spring that Aracely Ochoa shared

---

[2]Before submitting the case to the jury, the circuit court granted Respondents' motions for judgment of acquittal as to fourth-degree sexual offense and conspiracy to commit fourth-degree sexual offense.

with her husband, David Rivera; her mother, Blanco Armina Campos; her stepfather, Rolando Callejas; and her son, who was a minor. Ochoa, who worked as a manager at a nearby Cash Depot, where customers came to cash checks and send money orders, recognized Alaameri as a regular customer of the store. The men attacked Rivera and bound him, Ochoa, and Callejas with zip-ties and forced them to lie face-down on the floor. Over the course of the night and following morning, the assailants engaged in multiple failed attempts to gain access to the Cash Depot—once with Johnson and Oxely going alone, a second time with Johnson and Oxely taking Ochoa with them, and a third time with Johnson alone taking Ochoa. Initially, Alaameri obtained the keys to the Cash Depot and the code to the store's safe from Ochoa and sent Johnson and Oxely to the Cash Depot. Alaameri hit Ochoa in the head with a pocketknife and threatened to harm her son if she failed to cooperate. Ochoa provided the code to the safe but told Alaameri that she did not have the code to the alarm system at the Cash Depot. Alaameri instructed Ochoa that if she received a telephone call from the Cash Depot's alarm company while Johnson and Oxely were gone, she should say that two people were cleaning the store. Johnson and Oxely returned to the apartment and informed the others that the alarm had sounded when they attempted to enter the Cash Depot. Ochoa did not receive a call.

At approximately 1:00 a.m. on August 2, 2017, Campos, who had been at work, arrived home, where she was dragged through the door, taken to the bedroom where the others had been moved, and had a blanket thrown over her face.

Next, Johnson and Oxely took Ochoa to the Cash Depot in the family van. But, when they arrived, Ochoa's boss was at the store. So, they returned to the apartment.

On the third attempt, on the morning of August, 2, 2017, at the time that Ochoa was scheduled to go to work, Johnson took Ochoa to the store alone. But, when they arrived, there was a crossbar on the door preventing access. While Ochoa was gone with Johnson, Oxely slashed Rivera with a knife. Rivera gained possession of the knife, however, and went to the living room, and yelled for the police. Oxely ran out the front door. Callejas broke, and climbed out of, a window to seek help. Callejas made it to a bus stop, where he found a telephone and called the police. Campos also climbed out the window. When Johnson and Ochoa returned from the Cash Depot, Ochoa saw Campos running across the street, and Johnson told her to make Campos return to the apartment. Ochoa, Campos, and Johnson returned to the apartment. Rivera opened the door, pulling Ochoa and Campos inside. Johnson ran off. By that time, all of the assailants had left the apartment, and the police arrived. Several items were discovered to be missing from the apartment, including a computer, watches, documents, and currency.

## Jury Deliberations and Jury Notes

On August 29, 2018, the first day of jury deliberations, at 6:57 p.m., the circuit court received from the jury what would be the first of three notes concerning jury nullification, asking: "Do we have the right to use jury nullification of a charge?"[3] The circuit court gathered counsel, read the jury note, and asked for counsel's positions on how to respond to the jury note. The prosecutor indicated that he would respond by saying that the verdict

---

[3]The jury note included a notation indicating that it was "From a Juror[.]" In other words, the note appeared to be sent by a single juror, not from the jury's foreperson on behalf of the entire jury.

sheet offered the only two choices—*i.e.*, guilty or not guilty. Oxely's counsel stated that "it's difficult to have a position other than they are either not guilty or the[y're] guilty[,]" and deferred to the circuit court on how to respond. Johnson's counsel argued: "[O]ur position would be [] to instruct the jury that deliberations and rendering the verdicts [are] in the sole providence [sic] of the jury." Sayles's counsel stated that he "was trying to look up some law . . . because it's kind of an unusual question," but that he was "inclined to say, yes." Sayles's counsel explained:

> The last time I looked at this which was a long time ago, I believed that there wasn't any support for the Court instructing the jury that they could nullify, but I don't think that there's any case that says that if there's a question, the Court should tell the jury that they can't. You know, I think that's [the] only right answer to this because, you know, I agree that the Court really can't instruct the jury up front about jury nullification, but if they have a question and the answer is anything other than yes, I think it's essentially the Court saying that, no, you don't have the right to use jury nullification and I'm continuing to frantically try and find some cases on this. . . . So, anyway, our request is that the Court answer yes.

The circuit court disagreed, stating that responding affirmatively "would be a violation of the rules of evidence, it would be a violation of the law in Maryland, it would be a violation of the United States Constitution and [the court was] not going to do that. There is no right to jury nullification." The circuit court instead provided the following written response to the jury note at 7:25 p.m.: "Your verdict must be based solely on the evidence. Your choices, based on the evidence[,] are Not Guilty or Guilty. Reread your instructions." (Paragraph break omitted). Sayles's counsel objected to the written response based on his earlier comments. Johnson's counsel also objected to the written response, specifically, the last line of the response instructing the jury to reread the instructions, arguing that it

- 8 -

was coercive.

Later that same day, at 7:58 p.m., the circuit court received a second note, asking: "Can you answer the jury nullification with a yes or no response? From a juror?" The record reflects that the circuit court met with counsel in chambers to discuss the note, but the record is silent as to the discussion that occurred. Afterward, in open court, the circuit court read the jury note aloud and stated that, as indicated in chambers, the jury would be brought into the courtroom and provided an oral response. Thereafter, the circuit court orally instructed the jury as follows:

> Now, I am not a hundred percent sure that the juror or jurors that wrote the question have the same definition of jury nullification as the law has it.
>     But if it is, then here's the answer. Here's what jury nullification is. Jury nullification, a juror's knowing and deliberate rejection of the evidence or refusal to apply the law, that's considered jury nullification.[4] And the answer is no, you can't have jury nullification. You have to decide this case based on the evidence as you find it and apply the law as I gave it to you.
>     You decide the facts, the weight of the evidence, you, the 12, then you apply the law. To say you can do jury nullification would be a miscarriage of justice because there'd be no reason reading you the law and no reason you considering the evidence. And that wouldn't make sense would it? You are the only ones that weigh the evidence. You decide what weight you want to give it, what you find.
>     Once you get to where you are with the evidence, you take the law as I give it to you, you put it together and apply it and try and reach a verdict. So, your decision is going to be made on the evidence, applying your common sense, your past life experiences and you're going to take the law and apply it to all of that. So, nullification shouldn't even be a consideration. It's not on the verdict sheet. It's not in the instructions. Okay, I think I've said enough on that.[5]

---

[4]The circuit court's definition of jury nullification appears to be based, in part, on the Black's Law Dictionary definition of the term. See *Jury Nullification*, Black's Law Dictionary (11th ed. 2019).
    [5]The jury note contains the following written notation:

- 9 -

After instructing the jury, the circuit court dismissed the jury for the evening and Sayles's

counsel objected to the instruction.

The next day, August 30, 2018, the jury resumed its deliberations and, at 9:35 a.m.,

the circuit court received a third note with a question about nullification, asking:

> Why is there is a legal definition of jury nullification where a juror can refuse
> to apply the law if there is no legal circumstances where that can occur? Can
> you please cite the specific law that does not allow a juror the right to jury
> nullification in the state of Maryland?

The third jury note stated that it was "[f]rom juror #112[.]"  A discussion as to how the

circuit court should respond to the note ensued.  The prosecutor pointed out that the jury

had already been instructed, and argued:

> I continue to feel like any other information that they're given, I understand
> that the definition for jury nullification was given, but I almost feel like that
> actually even clouds it even more.  So I know it's difficult to say it, but I
> would propose that you simply say again your instructions were given to you
> and you decide on guilt or innocen[ce] based on what you remember the
> evidence being and I would breach it and leave it at that.  I don't want to give
> anyone else any further instructions.

Johnson's counsel responded:

> [T]he Court gave him [*i.e.*, Juror No. 112,] his definition of a jury
> nullification last night and at this point, with that definition given already
> being instructed that it was improper that we can one, instruct the juror that
> if the juror believes that -- it seems that there's some inkling of belief that the
> elements are not being met and if that's the case and his free will to be able
> [to] deliberate with other jurors is th[e] issue, then I would propose that the
> Court give an allocute instruction,[6] that that's really what's going on

---

answered on the record
8:19
8/29/18

[6]It appears that where the transcript indicates that, in this response, counsel said
"allocate instruction," counsel was referring to an <u>Allen</u> instruction. <u>See</u> note 9, *infra*.

- 10 -

because it seems that somehow this juror cannot deliberate properly with the other jurors. So I would, you know I know of course they would not bring them in or even be able to observe it they're not able to get along or this single juror is being ostra[c]ized, but I wouldn't take -- you know just to ask the same question that was asked before, it seems like there's something, there's an undercurrent here and that undercurrent very likely is that there's not a free deliberation process, that this juror's simply wheels are being ran over and at that point we should instruct the juror do you feel as if the elements are met, that it's innocent or guilty and if not and there's some other issue, then we at this point there's only hours into the deliberation that we go into an allocute instruction.

Sayles's counsel responded:

I think we should answer the question and as far as I can tell there is no law that does not allow a juror the right to jury nullification, the best that I've been able to find is [] there's case law saying that it's not proper for the Judge to instruct the jury at the attorney's request and it's not proper to make the arguments in closing, but I'm not aware of any law that says that the jury cannot use nullification. I would suggest that we cite the Maryland Constitution Article 23 in the trial called criminal cases, the jury shall be the judges of law as well as fact. The clause ends, except that the Court ma[y] pass upon a sufficiency of the evidence to sustain a conviction, I don't know that that last clause is necessary, but I think that what the jury wants to know is, is there any law that does or does not allow a juror the right to jury nullification in the State of Maryland, I think the answer is no. But I think the Maryland Constitution does provide the closest possible answer which is the jury shall be the judge of law as well the fact instructed.

The circuit court rejected the notion that the jury is the judge of the law as being contrary to Maryland law. The circuit court stated that the jury is "not the judge of the law" and that it was "not going to advise him of anything close to it." Sayles's counsel noted that Juror Number 112 was asking for the law and the "closest" he could "find [was] the plain language of Article 23 in the Maryland Constitution so [he] would suggest that we cite

- 11 -

that."[7]  The circuit court stated that doing so would essentially give the jury three options—

not guilty, guilty, and jury nullification—which does not "exist in Maryland law[.]"  The

circuit court reiterated that the jury must apply the law as explained by the court in arriving

at a verdict, and stated:

> So they have to apply the law.  They're told they can find the facts any way they want and that's their prerogative and if they choose to find that the facts are insufficient, that's their call, but jury nullification by definition is saying I think somebody's, I think the evidence supports guilt, I think the law when you apply the evidence supports a guilty finding.  I find beyond the reasonable doubt somebody's guilty, however, for whatever reason public statement, you name it, I'm going to choose to find them not guilty, that's a definition of jury nullification and that's improper.  I can't, I don't think by saying that it's their prerogative to find the evidence of the facts they want basically addresses the nullification.

The circuit court recessed briefly and once back on the record, Johnson's counsel

argued:

> I was just thinking that maybe we could suggest to the juror that it is not providence [sic] of the Court to second-guess the juror's analysis of the evidence and the juror, if the juror feels that the elements are not met of the crime, then the not guilty verdict is probably.  But if the jury fee[l]s as if the elements are met, then the juror should vote for guilty, but it is not our job to probe into the analysis that each individual makes in reaching their conclusions.  I mean I know it doesn't address it head on.

The circuit court responded, in part, by explaining that it would direct its instructions to

Juror Number 112:

> [I]t's going to say basically attention juror 112, you may not use or resort to jury nullification.  It is improper and would be a violation of your oath to and then "to truly try to give a true verdict according to the evidence."  Furthermore, nullification would violate the Court's order, the court's order

---

[7]In relevant part, Article 23 provides: "In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction."

and instruction. Well the Court's order that you must apply the laws as I explained it in arriving at your verdict and I believe that the Defense, all three defendant[]s would object to that instruction for the reasons you've stated, correct?

Sayles's counsel and Johnson's counsel both responded in the affirmative. The circuit court asked Sayles's counsel whether he wanted the court to respond by saying that the jury could implement jury nullification, and the following colloquy occurred:

> [SAYLES'S COUNSEL]: No, Your Honor. What the question asks for is the law that does or does not allow a juror the right to jury nullification.
>
> THE COURT: Right, it'd be like if [the] Court orders you not to do something, there's contempt, but there's not a law that says you can't violate a Judge's order. I mean it's the opposite for, there's not a law in there, there's not a specific statute that says you can't have implement jury nullification.
>
> [SAYLES'S COUNSEL]: Well then I think you should say that, I think that's what the question is. It says can you please cite the specific law and if the Court's position is there's no law addressing that, then you should say there is no specific law that does or does not allow a juror the right to jury nullification.
>
> THE COURT: Okay, that's telling him in essence that you can do it since there's no law against it, he's not an attorney and even if he is, he's wrong. He's as I said it's, I think by telling him that there's no specific law basically is telling him it's okay.

Johnson's counsel requested that the circuit court direct the response to the jury foreperson because he did not want to "singl[e] out" Juror Number 112 or make the juror "feel like we're ganging up on him." The circuit court took Johnson's counsel's suggestion.

The jury returned to the courtroom and the circuit court responded to the third note by instructing the jury as a whole as follows:

> Ladies and gentlemen of the jury you may not use, implement or resort to jury nullification. It is improper, it's contrary to the law [and] would be a violation of your oath to truly try and reach a verdict according to the

evidence, which you all took that oath. Furthermore, nullification would violate this Court's order and it's the law of Maryland that "you must apply the laws I explained it in arriving at your verdict," sincerely me. I'll give you a copy of that.[8]

After responding to the third jury note, the circuit court gave a modified <u>Allen</u> instruction.[9]

---

[8]The written instruction given to the jury in response to the third jury note on jury nullification was worded slightly different from the circuit court's oral instruction but substantively contained the same response, providing:

Jurors:

You may not use or implement or resort to jury nullification. It is improper, contrary to the law and would be a violation of your oath to "truly try to reach a verdict according to the evidence."

Furthermore, nullification would violate t[he] Court's Order that "you must apply t[he] law as I explain it in arriving at your verdict."

Sincerely,

[Circuit Court Judge]

[9]While the parties and the circuit court discussed the proper response to the third jury nullification note, at 11:36 a.m., the circuit court received from the jury another note asking: "What do we do in the case of the presence of guilty AND non-guilty votes and we feel that further deliberations will not change these votes?" In response, the circuit court gave a modified <u>Allen</u> instruction, instructing:

[Y]our verdict must be the considered judgment of each of you. In order to reach a verdict, all of you must agree. In other words, your verdict must be unanimous. You must consult with one another and deliberate with a view towards reaching an agreement if you can do so without violence to your individual judgment. Each of you must decide this case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. During the deliberation, do not hesitate to re-examine your own views. You should change your opinion if convinced you are wrong, but do not surrender your honest belief as to the weight or effect of the evidence only because of the opinion of your fellow jurors or for the mere purpose of reaching a verdict.

- 14 -

Later the same day, at 3:40 p.m., the circuit court received from the jury a note stating that it had "agreed on the guilt of one defendant[,]" but had "not agreed to the identification of 2 defendants[,]" and that some jurors were "adamant about their decisions (not Guilty)[.]"  Less than an hour later, at 4:33 p.m., the circuit court received from the jury another note stating that it was "not sure how to proceed" and asking the circuit court to "advise[.]"  And, at 5:14 p.m., the circuit court received from the jury yet another note indicating that it was "unable to move forward" and that it was "deadlocked[.]"  At that point, the circuit court acknowledged the notes and sent the jury home for the evening to rest.

The following day, August 31, 2018, the jury resumed its deliberations.  At 9:45 a.m., the circuit court received from the jury a note asking: "Can we please get the answers from yesterday's questions?"  At 10:15 a.m., the circuit court responded by instructing the jury in writing: "Yes. See answers provided."  At 12:24 p.m., the circuit court received from the jury a note stating: "[W]e need to let you know we have made significant progress."  At 4:03 p.m., the circuit court received a note stating that the jury had "reached final verdicts" in the case.  Thereafter, the jury assembled in the courtroom and returned the verdicts discussed above.

---

In State v. Fennell, 431 Md. 500, 508 n.4, 66 A.3d 630, 635 n.4 (2013), we noted that an Allen instruction "is derived from an instruction given to a deadlocked jury as discussed by the United States Supreme Court in *Allen v. United States*, 164 U.S. 492 [] (1896)." Such an instruction involves asking the jurors "to conciliate their differences and reach a verdict[,]" and "is intended to stress to jurors the necessity of unanimity in their decision, as well as to encourage a juror to listen to the viewpoints of other jurors."  Fennell, 431 Md. at 508 n.4, 66 A.3d at 635 n.4 (cleaned up).

**Opinion of the Court of Special Appeals**

Respondents each noted an appeal, and on April 1, 2020, the Court of Special Appeals reversed the circuit court's judgment and remanded the case to the circuit court for a new trial. See Sayles, 245 Md. App. at 167, 226 A.3d at 372. The Court of Special Appeals held that the circuit court's instructions in response to the second and third jury notes about jury nullification were legally incorrect and prejudicial. See id. at 144, 226 A.3d at 359.[10] The Court of Special Appeals concluded that the circuit court's instruction that engaging in jury nullification is contrary to the law was inaccurate because the power of jury nullification is well established and, as such, not contrary to the law. See Sayles, 245 Md. App. at 158, 226 A.3d at 367. The Court of Special Appeals determined that the circuit court's instruction that engaging in jury nullification would violate the court's order was inaccurate because "juries have the power to nullify absent any legal consequences[,]" whereas, according to the Court of Special Appeals, the circuit court's instruction suggested that jurors could possibly face legal consequences for engaging in jury nullification. Id. at 158, 226 A.3d at 367. The Court of Special Appeals stated that the circuit court's "error" in instructing the jury was "compounded" by its "problematic definition of jury nullification[,]" which, according to the Court of Special Appeals, was

---

[10]In the Court of Special Appeals, the State raised an issue as to preservation and the Court of Special Appeals concluded that Respondents preserved the issue concerning the circuit court's jury nullification instructions. See Sayles, 245 Md. App. at 144-46, 226 A.3d at 359-60. The Court of Special Appeals determined that, to the extent that the issues concerning the jury nullification instructions were unpreserved, it nevertheless would exercise its discretion to consider the issues as to all three Respondents. See id. at 146, 226 A.3d at 360. No issue as to preservation was raised in this Court.

- 16 -

incomplete and did not contain information about the motive for jury nullification—"to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality or fairness." Id. at 158-59, 226 A.3d at 367 (quoting *Jury Nullification*, Black's Law Dictionary (11th ed. 2019)) (internal quotation marks omitted). In the Court of Special Appeals's view, it is the motive for the rejection of evidence that makes the rejection nullification, not the act of rejection of the evidence in and of itself. See id. at 159, 226 A.3d at 367.

The Court of Special Appeals also concluded that Respondents demonstrated "probable prejudice." Id. at 162, 226 A.3d at 369. The Court of Special Appeals stated that, after receiving the circuit court's response to the third jury nullification note, "informing the jury that jury nullification is 'contrary to law' and would constitute a violation of the court's order, the jury -- which had been previously deadlocked -- soon returned a verdict of guilty for all three" Respondents. Id. at 162, 226 A.3d at 369. As such, the Court of Special Appeals was persuaded that, after hearing the circuit court's instruction in response to the third jury nullification note, "it [was] at least probable that a juror who would have otherwise voted to acquit one or more of [Respondents] on a nullification theory would have changed his or her vote after being informed that nullification was prohibited and would constitute a violation of the court's order." Id. at 162, 226 A.3d at 369.

**Petitions for Writs of *Certiorari***

On May 18, 2020, the State filed three petitions for a writ of *certiorari*, one as to each Respondent, raising the following two issues:

1. Did the Court of Special Appeals wrongly conclude that a jury has the power to nullify the verdict and, therefore, the trial court abused its discretion when, in response to a jury note, it told the jury that it could not resort to jury nullification?

2. If the trial court abused its discretion when it responded to the jury's inquiries concerning jury nullification, did the Court of Special Appeals wrongly conclude that this error prejudiced [Respondents]?

On July 13, 2020, this Court granted the petitions. See Sayles, 469 Md. 659, 232 A.3d 259; Johnson, 469 Md. 658, 232 A.3d 258; Oxely, 469 Md. 658, 232 A.3d 258.

On September 2, 2020, Respondents each filed a motion to consolidate, requesting that this Court consolidate the three cases for briefing and argument. The State had no objection to the granting of the motions, and this Court granted the motions, consolidating the cases for briefing and oral argument.

**STANDARD OF REVIEW**

In Appraicio v. State, 431 Md. 42, 51, 63 A.3d 599, 604 (2013), this Court observed that a trial court's decision to give a particular jury instruction "will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." (Cleaned up). In response to a jury question, a trial court may give a supplemental instruction. See id. at 51, 63 A.3d at 604. In State v. Bircher, 446 Md. 458, 463, 132 A.3d 292, 295, cert. denied, ___ U.S. ___, 137 S. Ct. 145 (2016), we stated that "[w]hether to give supplemental instructions is within the sound discretion of the trial judge and will not be disturbed on appeal, absent a clear abuse of discretion." (Cleaned up).

**DISCUSSION**

**I.**

**The Parties' Contentions**

The State contends that the Court of Special Appeals improperly concluded that a jury has the power to nullify and that the circuit court abused its discretion in instructing the jury, in response to questions from the jury, that the jury could not engage in jury nullification. The State argues that there is no power of jury nullification in Maryland and that the circuit court properly responded to questions from the jury by instructing the jury that it must apply the laws as instructed, and by informing the jury that jury nullification is contrary to the law and would violate the jury's oath. According to the State, because jury nullification is not authorized in Maryland, when asked by a jury, a trial court may not imply that a jury may engage in jury nullification. The State asserts that, even if jury nullification were "legitimate," the circuit court's instructions in this case were proper "because the theoretical existence of jury nullification does not vindicate a judge instructing jurors that they may set aside their oaths and make a decision contrary to the evidence." The State maintains that, because a jury lacks the power to engage in jury nullification, the circuit court's instructions in this case—that jury nullification is contrary to the law and would violate the court's order—constituted a correct statement of the law. The State argues that the circuit court could not have responded to the jury notes in the affirmative—*i.e.*, stating that jury nullification is an option—without "running afoul" of case law that provides that a trial court's instructions on the law are binding.

Respondents counter that the Court of Special Appeals was correct in concluding

that the circuit court abused its discretion in instructing the jury that engaging in jury nullification would be contrary to the law and violative of a court order because such instructions contain inaccurate statements of the law. Respondents argue that the Court of Special Appeals correctly recognized the well-established power of the jury to engage in jury nullification and appropriately adopted the Black's Law Dictionary definition of the term. Respondents assert that, although jury nullification is disapproved of, "it remains a fundamental truth that juries retain the power to nullify."

Respondents maintain that, although it is improper both for a trial court to affirmatively instruct a jury that it may engage in jury nullification and for parties to argue nullification to a jury, a jury nonetheless has the power to nullify and this Court has never held that a jury is prohibited from exercising that power. Respondents contend that, even if this Court holds that a jury does not have the power to engage in jury nullification, reversal is warranted because the circuit court's instructions in this case constituted an abuse of discretion and were prejudicial as the circuit court failed to give the complete definition of jury nullification and inaccurately suggested that the jury could face legal consequences for engaging in nullification. Respondents also argue that the circuit court's responses to the jury's questions led the jury to believe that it was not free to reject any of the State's evidence.

In a reply brief, the State contends that the circuit court's instructions, considered in totality, lead to the conclusion that the definition of jury nullification provided by the court "was correct, complete, and did not contribute to any usurpation of the jury's role as fact finder." The State points out that, after defining jury nullification, the circuit court

reminded the jury that it (the jury) must decide the facts and the weight of the evidence, and apply the law, and that, as such, the jury would not have interpreted the definition of jury nullification as prohibiting it from rejecting evidence presented at trial.

**Law**

It is well known that jury deliberations are private and conducted in secret. See Stokes v. State, 379 Md. 618, 638, 843 A.2d 64, 75 (2004). The United States Court of Appeals for the Second Circuit has stated that the secrecy of jury deliberations is a "cornerstone" of the American judicial system and that, generally, nobody, including the trial judge, "has a 'right to know' how a jury, or any individual juror, has deliberated or how a decision was reached by a jury or juror." United States v. Thomas, 116 F.3d 606, 618 (2d Cir. 1997). The secrecy and privacy of jury deliberations enables jury nullification to occur. See id.

> Black's Law Dictionary defines "jury nullification" as:
>
> A jury's knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness.

*Jury Nullification*, Black's Law Dictionary (11th ed. 2019). Some Federal courts have favorably cited and adopted this definition. See, e.g., Verlo v. Martinez, 820 F.3d 1113, 1119 & n.1 (10th Cir. 2016) (The Tenth Circuit described jury nullification as "a practice in which a jury refuses to convict a defendant despite legal evidence of guilt because the jury members believe the law at issue is immoral" and then footnoted the Black's Law Dictionary definition of "jury nullification."); see also United States v. Boone, 458 F.3d

321, 328 n.2 (3d Cir. 2006), cert. denied, 551 U.S. 1147 (2007); United States v. Young, 403 F. Supp. 3d 1131, 1148 (D.N.M. 2019).  By contrast, in Thomas, 116 F.3d at 608, 614, the Second Circuit referred to jury nullification as "the intentional disregard of the law as stated by the presiding judge[,]" and stated that jury nullification, by definition, "is a violation of a juror's oath to apply the law as instructed by the court[.]"

In Sparf v. United States, 156 U.S. 51, 74 (1895), the Supreme Court of the United States stated that juries "have the physical power to disregard the law, as laid down to them by the court[,]" but they do not "have the moral right to decide the law according to their own notions or pleasure."  In Sparf, id. at 63, 99-100, the Supreme Court concluded that the trial court properly gave a supplemental instruction that told the jury "that, in view of the evidence, the only verdict the jury could under the law properly render would be either one of guilty of the offense charged, or one of not guilty of the offense charged[.]"  In so concluding, the Supreme Court stated that it "must hold firmly to the doctrine that in the courts of the United States it is the duty of juries in criminal cases to take the law from the court, and apply that law to the facts as they find them to be from the evidence."  Id. at 102.[11]

In addressing the issue of jury nullification, Federal courts have followed the Supreme Court's lead in Sparf.  In United States v. Drefke, 707 F.2d 978, 982 (8th Cir.),

---

[11]The Supreme Court recognized, however, that its holding did not necessarily apply in jurisdictions where there was a contrary constitutional provision permitting the jury to decide both the law and facts.  See Sparf, 156 U.S. at 102 ("[W]here the matter is not controlled by express constitutional or statutory provisions, it cannot be regarded as the right of counsel to dispute before the jury the law as declared by the court.").

cert. denied sub nom. Jameson v. United States, 464 U.S. 942 (1983), the Eighth Circuit stated that, since Sparf, "federal courts have uniformly recognized the right and duty of the judge to instruct the jury on the law and the jury's obligation to apply the law to the facts, and that nullification instructions should not be allowed." And, in United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993), cert. denied, 512 U.S. 1223 (1994), the First Circuit stated that, "although jurors possess the raw power to set an accused free for any reason or for no reason, their duty is to apply the law as given to them by the court." (Citation omitted). Moreover, although "jurors may choose to flex their muscles, ignoring both law and evidence in a [] rush to acquit a criminal defendant, neither the court nor counsel should encourage jurors to exercise this power." Id. (citation omitted). In Thomas, 116 F.3d at 615, the Second Circuit further explained that "the power of juries to 'nullify' or exercise a power of lenity is just that—a power; it is by no means a right or something that a judge should encourage or permit if it is within his [or her] authority to prevent." And, in United States v. Washington, 705 F.2d 489, 494 (D.C. Cir. 1983), the United States Court of Appeals for the District of Columbia Circuit concluded that a trial court properly refused to give an instruction on jury nullification requested by the defendant because the defendant's "assertion that an instruction on jury nullification is the best assurance against its arbitrary exercise . . . has no support in the law and flies in the face of common sense." (Cleaned up).

Consistent with the Supreme Court's decision in Sparf, courts in many States have recognized that jury nullification sometimes occurs but have expressly disapproved of the practice. In Walden v. State, 895 N.E.2d 1182, 1184 (Ind. 2008), the Supreme Court of

- 23 -

Indiana stated that, in an earlier case, it had "made clear that Indiana juries do not have a broad, general nullification power of criminal cases." In People v. Williams, 21 P.3d 1209, 1223 (Cal. 2001), the Supreme Court of California stated that "[j]ury nullification is contrary to our ideal of equal justice for all and permits both the prosecution's case and the defendant's fate to depend upon the whims of a particular jury, rather than upon the equal application of settled rules of law." As such, the Supreme Court of California "reaffirm[ed] the basic rule that jurors are required to determine the facts and render a verdict in accordance with the court's instructions on the law." Id. Similarly, over a decade earlier, in People v. Partner, 180 Cal. App. 3d 178, 186 (1986), a California Court of Appeal concluded that, "although a jury may occasionally exercise a raw power to return a verdict more favorable to the defendant than warranted by the evidence and the law, this power should not be legitimized in instructions to the jury." The Court determined "that the jury should not be instructed on so-called jury nullification. . . . The jury should not be instructed that it may disregard the law." Id. (citation omitted). In People v. Goetz, 532 N.E.2d 1273, 1274 (N.Y. 1988), cert. denied, 489 U.S. 1053 (1989), the Court of Appeals of New York stated that, although nothing prevents a "jury from acquitting although finding that the prosecution has proven its case, this so-called 'mercy-dispensing power', as defendant concedes, is not a legally sanctioned function of the jury and should not be encouraged by the court[.]" (Citations omitted). And, in Commonwealth v. Fernette, 500 N.E.2d 1290, 1298 (Mass. 1986), the Supreme Judicial Court of Massachusetts declined to approve of an instruction requested by the defendant that would inform "the jury of their power to nullify the law as stated by the court, in effect sanctioning jury nullification." (Footnote

omitted).  In a footnote, the Court "recognize[d] that jurors may return verdicts which do not comport with the judge's instructions[,]" but did "not accept the premise that jurors have a right to nullify the law on which they are instructed by the judge, or that the judge must inform them of their power."  Id. at 1298 n.23 (citations omitted).

Likewise, in Walker v. State, 445 N.E.2d 571, 575 (Ind. 1983), the Supreme Court of Indiana held that a trial court correctly instructed a jury that, although it was to determine the law, that did "not mean that you have the right to make, repeal, disregard, or ignore the law as it exists.  The instructions of the Court are the best source as to the law applicable to this case."  And, the Supreme Court of Indiana held that the trial court properly refused to give instructions that "would have conveyed to the jury the belief that it had a power of nullification, which clearly it does not possess under the law."  Id. (citations omitted).  More recently, in Lohmiller v. State, 884 N.E.2d 903, 911 & n.8 (Ind. Ct. App. 2008), the Court of Appeals of Indiana confirmed that a specific section of the Indiana Constitution—providing that "in all criminal cases whatever, the jury shall have the right to determine the law and the facts"—"does not provide a right for jury nullification."  (Footnote omitted).  The Court also concluded that the trial court properly rejected giving the defendant's requested instruction on jury nullification, noting that the Supreme Court of Indiana had previously held that, because the Indiana Constitution "does not provide the right for jury nullification, the trial court properly refused to give a tendered instruction on the issue."  Id. at 911 n.9.  In People v. Montanez, 667 N.E.2d 548, 553 (Ill. App.), appeal denied, 671 N.E.2d 739 (Ill. 1996), the Appellate Court of Illinois stated: "The power of jury nullification exists, but it is not authorized by the law.  A defendant has no right to have

the jury defy the law or ignore the undisputed evidence." (Citation omitted). And, in

Hartley v. State, 653 P.2d 1052, 1055 (Alaska Ct. App. 1982), where a defendant made an

argument that was "a variation on the doctrine of jury nullification[,]" the Court of Appeals

of Alaska "reject[ed] th[e] argument and the doctrine of nullification[,]" determining that

a "jury has a duty, albeit unenforceable, to decide a criminal case on the law and the

evidence." (Citations omitted).

Similarly, in State v. Paredes-Solan, 222 P.3d 900, 908-09 (Ariz. Ct. App. 2009),

the Court of Appeals of Arizona held that a trial court did not abuse its discretion in refusing

to instruct the jury on nullification, explaining:

> [The defendant] has not cited, nor have we found, any Arizona or
> federal authority supporting his argument that he was entitled to a jury
> nullification instruction. But, we find extremely persuasive the substantial
> jurisprudence from the federal courts concluding defendants are not entitled
> to such an instruction. It is true, as [the defendant] notes, that the jury's
> nullification power is well-established. However, jury nullification is not the
> legal right of either the defendant or the jury; the jury merely has a power to
> acquit on bad grounds, because the government is not allowed to appeal from
> an acquittal by a jury. Thus, although a jury-nullification verdict must stand,
> such a verdict contravenes the law the jury has been instructed to follow in
> deciding the case. Consequently, although juries have the power to ignore
> the law in their verdicts, courts have no obligation to tell them they may do
> so.

(Cleaned up). And, in Mouton v. State, 923 S.W.2d 219, 221 (Tex. App. 1996), where a

defendant argued that the jury should have been advised that, because of his youth, it could

ignore the law if they so decided and acquit the defendant, the Court of Appeals of Texas

held that the defendant was not entitled to a jury nullification instruction. The Court stated

that, although it was "undisputed that a jury has a power of nullification" and it "is a

recognized aspect of our jury system, there is no constitutional implication that would

require a trial judge to instruct the jury on nullification." Id. The Court stated that, over a hundred years earlier, in Sparf, the Supreme Court had rejected the argument raised by the defendant, and that "Federal courts faced with requests for jury nullification instructions have consistently followed the *Sparf* reasoning." Mouton, 923 S.W.2d at 221-22 (cleaned up). The Court concluded that, although jury nullification exists, "it is not a legal standard and is not a constitutional right of the defendant. The court's duty is to instruct the jury on the law, and the trial court in the instant case complied with that duty." Id. at 222.

Yet, some States have recognized a jury's ability to engage in jury nullification and granted trial courts the authority to advise juries about the practice. For example, in State v. Paris, 627 A.2d 582, 588-89 (N.H. 1993), the Supreme Court of New Hampshire held that a trial court did not err in refusing to give the jury nullification charge that the defendant had requested where it instead gave a different instruction that was the equivalent of a jury nullification instruction. The Court stated that a jury nullification charge informs "the jury of its historical prerogative to acquit a defendant even if the verdict is contrary to the law and the facts of the case." Id. at 588 (cleaned up). The Court concluded that the instruction that the trial court gave—"that 'if you find that the State has proven all of the elements of the offense charged beyond a reasonable doubt, you *should* find the defendant guilty'"—essentially was a jury nullification instruction because it informed the jury that it "may acquit the defendant even if the State proved beyond a reasonable doubt each element of the offenses charged." Id. at 589 (emphasis in original). In State v. Paul, 104 A.3d 1058, 1062 (N.H. 2014), the Supreme Court of New Hampshire explained:

It is well established that jury nullification is neither a right of the defendant

nor a defense recognized by law. Rather, jury nullification is the undisputed power of the jury to acquit, even if its verdict is contrary to the law as given by the judge and contrary to the evidence. The trial court ordinarily gives the *Wentworth* instruction,[12] which is the equivalent of a jury nullification instruction. The defendant is not entitled to a more specific jury nullification instruction, and the decision to give such an instruction, when requested, lies within the sound discretion of the trial court depending on the facts of a particular case.

(Cleaned up). In other words, in New Hampshire, it appears that the giving of a <u>Wentworth</u> instruction, which is considered to be the equivalent of a jury nullification instruction, is authorized by case law.[13]

In Maryland, with the exception of the Court of Special Appeals's opinion here, no case, statute, or rule expressly defines the term "jury nullification" or approves of the practice of jury nullification. Case law, however, clearly holds that it is improper for an attorney to argue jury nullification to a jury. In <u>Blackwell v. State</u>, 278 Md. 466, 478-80,

---

[12]Derived from <u>State v. Wentworth</u>, 395 A.2d 858, 863 (N.H. 1978), the <u>Wentworth</u> instruction is:

> If you have a reasonable doubt as to whether the State has proved any one or more of the elements of the crime charged, you *must* find the defendant not guilty. However, if you find that the State has proved all of the elements of the offense charged beyond a reasonable doubt, you *should* find the defendant guilty.

<u>Paul</u>, 104 A.3d at 1059 (quoting <u>Wentworth</u>, 395 A.2d at 863) (emphasis in original).

[13]As another example, in <u>Walker v. State</u>, 723 P.2d 273, 284 (Okla. Crim. App.), <u>cert. denied</u>, 479 U.S. 995 (1986), the Court of Criminal Appeals of Oklahoma described jury nullification as "the jury's exercise of its inherent power to bring a verdict of acquittal in the teeth of both law and facts[,]" and stated that, in capital cases, a jury nullification instruction "inform[s] the jury of its right to return a sentence of life no matter how great the weight of evidence supporting the circumstances." (Cleaned up). The Court held that, although a trial court may exercise its discretion to give a jury nullification instruction, a defendant is not entitled to such an instruction and it is not error for a trial court to refuse the defendant's request. <u>See</u> <u>id.</u>

365 A.2d 545, 552-53 (1976), cert. denied, 431 U.S. 918 (1977), this Court held that the trial court properly sustained an objection to defense counsel's opening statement because counsel's statement encouraged the jury to disregard the law, thereby essentially encouraging the jury to engage in jury nullification. We explained that Maryland law "does not confer upon the[ jury] untrammeled discretion to enact new law or to repeal or ignore clearly existing law as whim, fancy, compassion or malevolence should dictate, even within the limited confines of a single criminal case." Id. at 479, 365 A.2d at 553 (cleaned up). Likewise, in Thomas v. State, 29 Md. App. 45, 52, 349 A.2d 384, 388-89 (1975), cert. granted, 278 Md. 736 (1976), cert. dismissed, 279 Md. 604 (1977), where a defendant "candidly acknowledge[d] that his purpose" in wanting to inform the jury in closing argument of the mandatory sentence for use of a handgun in the perpetration of a felony was to seek jury nullification, the Court of Special Appeals held that such argument was improper.

To be sure, this Court, in *dicta*, has acknowledged the reality that juries sometimes engage in jury nullification. In Chambers v. State, 337 Md. 44, 45, 51, 650 A.2d 727, 727, 730 (1994), where we held that a particular section of a Maryland Rule did not require "a trial court, upon request, to instruct the jury that it may recommend that the court show mercy to a criminal defendant[,]"[14] we remarked, in *dicta*, that "[j]uries may have statutory

---

[14]At issue was former Maryland Rule 4-327(f), which provided that "[a] jury may recommend that the court show mercy to a defendant. The recommendation is not part of the verdict and is not binding upon the court." Chambers, 337 Md. at 45 n.1, 650 A.2d at 727 n.1 (quoting Md. R. 4-327(f)). That provision has since been repealed. See Md. R. 4-327.

power over punishment in some cases, and they always have the ability to nullify the application of the criminal law to a particular defendant." (Citation omitted). We explained that, "[n]evertheless, at common law, a defendant generally had no right to mercy from the jury; that function was performed by other officers." Chambers, 337 Md. at 51, 650 A.2d at 730 (citation omitted). In Chambers, the jury's ability to engage in jury nullification was not at issue, and aside from the statement noting that jury nullification exists, this Court did not otherwise comment on jury nullification.[15]

Significantly, this Court has repeatedly reaffirmed the principle that, other than with respect to the crime charged, a trial court's jury instructions are binding, and it is improper for a trial court to advise a jury that instructions are advisory only or that the jury is free to disregard them. See Stevenson v. State, 289 Md. 167, 180, 423 A.2d 558, 565 (1980); Montgomery v. State, 292 Md. 84, 91, 437 A.2d 654, 658 (1981). Although Article 23 of the Maryland Declaration of Rights provides, in pertinent part, that "[i]n the trial of all

---

[15]In Jackson v. State, 322 Md. 117, 124, 126-28, 586 A.2d 6, 9, 10 (1991), this Court held that a trial court did not err in permitting the State, over objection, to enter a *nolle prosequi* to lesser-included offenses. This Court concluded that the evidence adduced at trial "did not fairly support a conviction on the nol prossed counts[,]" and, accordingly, under the circumstances, the defendant "was not entitled to have the lesser included offenses go to the jury." Id. at 126-27, 586 A.2d at 10. After holding as much, this Court cautioned that the holding was "not to be read as indicating in any way an encroachment on the function of the jury." Id. at 128, 586 A.2d at 11. Then, in *dicta*, this Court remarked that "[a] jury has power to err, either fortuitously or deliberately, and to compromise or exercise lenity. It, therefore, retains the power to be the final arbiter in the determination of which, if any, of the crimes charged the accused is guilty." Id. at 128, 586 A.2d at 11 (cleaned up). Although the reference in *dicta* to a jury exercising lenity could be interpreted as showing that we recognized that jury nullification occurs, notably, in Jackson, this Court did not use the term "jury nullification" and no issue of jury nullification was present in the case.

criminal cases, the Jury shall be the Judges of Law, as well as of fact[,]" in Stevenson, 289

Md. at 180, 423 A.2d at 565, we concluded that, although under Article 23 the jury "is the

final arbiter of disputes as to the substantive 'law of the crime'[ and] the 'legal effect of

the evidence,'" "all other aspects of the law (e.[]g., the burden of proof, the requirement of

unanimity, the validity of a statute) are beyond the jury's pale, and the judge's comments

on these matters are binding upon that body." See also Montgomery, 292 Md. at 91, 437

A.2d at 658 (This Court held that instructions on certain bedrock principles "are not 'the

law of the crime;' they are not advisory; and they cannot be the subject of debate by counsel

before the jury. They are binding.").

Specifically, in 1980, in Stevenson, 289 Md. at 178, 189, 423 A.2d at 564, 570, this

Court held that the language of Article 23 did not on its face violate the Due Process Clause

of the Fourteenth Amendment to the Constitution of the United States, but that case law

showed that Article 23 did not grant a jury "the power to decide all matters that may be

correctly included under the generic label 'law.' Rather, [a jury's] authority is limited to

deciding the law of the crime, or the definition of the crime, as well as the legal effect of

the evidence before the jury." (Cleaned up). Accordingly, we held that "all other aspects

of law (e.[]g., the burden of proof, the requirement of unanimity, the validity of a statute)

are beyond the jury's pale, and that the judge's comments[, *i.e.*, jury instructions,] on these

matters are binding upon that body. In other words, the jury should not be informed that

all of the court's instructions are merely advisory[.]" Id. at 180, 423 A.2d at 565.

The following year, in Montgomery, 292 Md. at 91, 437 A.2d at 658, this Court held

that a trial court erred in instructing a jury that it "could pay no attention to instructions on

the law which did not pertain to the elements of the crime but which were standard instructions invoked to preserve the integrity of the judicial system and to assure the defendant a fair and impartial trial." We explained that the trial court's advisory only instructions were improper because instructions on certain "bedrock characteristics" of the American criminal justice system "are indispensable to the integrity of every criminal trial" and "are not 'the law of the crime;' they are not advisory; and they cannot be the subject of debate by counsel before the jury. They are binding. They are the guidelines of due process to which every jury is required to adhere." Id. at 91, 437 A.2d at 658.[16]

Recently, in Kazadi v. State, 467 Md. 1, 9, 223 A.3d 554, 559 (2020), this Court held "that, on request, during *voir dire*, a trial court must ask whether any prospective jurors are unwilling or unable to comply with the jury instructions on the fundamental principles of presumption of innocence, the State's burden of proof, and the defendant's right not to testify." In so holding, this Court relied on key developments in the law— namely, the holdings in Stevenson, 289 Md. at 179-80, 423 A.2d at 565, and Montgomery, 292 Md. at 91, 437 A.2d at 658, "that, other than with respect to the crime charged, jury instructions are binding[.]" Kazadi, 467 Md. at 8-9, 223 A.3d at 559. We reiterated that, "[c]onsistent with Stevenson, 289 Md. at 180, 423 A.2d at 565, and Montgomery, 292 Md. at 91, 437 A.2d at 658, today, jury instructions about the law are binding and trial courts

---

[16]In Montgomery, 292 Md. at 89, 437 A.2d at 657, this Court explained that a trial court's instructions to the jury are advisory only in "instances when the jury is the final arbiter of the law of the crime. Such instances arise when an instruction culminates in a dispute as to the proper interpretation of the law of the crime for which there is a sound basis."

advise juries as much." Kazadi, 467 Md. at 44, 223 A.3d at 579. We explained that the "long-standing fundamental rights" concerning the presumption of innocence, the burden of proof, and a defendant's right not to testify are "critical to a fair jury trial in a criminal case[,]" and *voir dire* questions about a juror's inability or unwillingness to honor those fundamental rights are "mandatory on request[.]" Id. at 46, 223 A.3d at 581. We concluded that, "[o]n request, during *voir dire*, a trial court must ask whether any prospective jurors are unwilling or unable to comply with the jury instructions on the presumption of innocence, the burden of proof, and the defendant's right not to testify." Id. at 48, 223 A.3d at 582.

In addition, this Court has held that legally inconsistent verdicts are not permissible. In McNeal v. State, 426 Md. 455, 458, 44 A.3d 982, 984 (2012), this Court defined a "legally inconsistent verdict" as

> one where the jury acts contrary to the instructions of the trial judge with regard to the proper application of the law. Verdicts where a defendant is convicted of one charge, but acquitted of another charge that is an essential element of the first charge, are inconsistent as a matter of law.

(Cleaned up). This Court has long held that guilty verdicts may not be legally inconsistent, regardless of whether a jury or a trial court tried the defendant. See Givens v. State, 449 Md. 433, 448, 144 A.3d 717, 725 (2016). Before McNeal and Givens, in Price v. State, 405 Md. 10, 29, 949 A.2d 619, 630 (2008), this Court overruled prior case law—in which we had held that a guilty verdict and a not-guilty verdict could be legally inconsistent where a jury tries the defendant—by holding "that 'inconsistent verdicts shall no longer be allowed.'" Givens, 449 Md. at 452, 144 A.3d at 728 (quoting Price, 405 Md. at 29, 949

A.2d at 630); see also McNeal, 426 Md. at 458, 44 A.3d at 984 (This Court stated that, in Price, we concluded "clearly that legally inconsistent jury verdicts in criminal cases were prohibited henceforth in Maryland.").

By contrast, factually inconsistent verdicts—"those where the charges have common facts but distinct legal elements and a jury acquits a defendant of one charge, but convicts him or her on another charge"—"are illogical, but not illegal[,]" *i.e.*, factually inconsistent verdicts are permissible. McNeal, 426 Md. at 458, 44 A.3d at 984 (cleaned up). In McNeal, id. at 471, 44 A.3d at 992, this Court stated that "[p]ractical considerations of how a trial judge would correct an inconsistent verdict militate[d] against reading the holding of *Price* to apply to factually inconsistent verdicts." In discussing the possible use of the process for correcting legally inconsistent verdicts to potentially correct factually inconsistent verdicts, we stated:

> The process, other than reversal on appeal, for correcting legally inconsistent verdicts (i.e., allowing the defendant, upon proper and timely objection, to have the trial judge send the verdict back to the jury for further resolution), as applied to factually inconsistent verdicts, would be risky because it may invade the province of the jury with regard to factual determinations. Because of the position of authority the trial judge occupies in the court room, his/her instructions to resolve the factual inconsistency may be construed by the jurors as a suggested outcome, or that their original conclusions are deemed incorrect. Juries may engage in internal negotiations, compromise, or even make mistakes; however, we cannot divine whether the inconsistency is the product of lenity. We will not risk disturbing a verdict for the wrong reasons. [*United States v.*] *Powell*, 469 U.S. [57,] 65 [(1984)] (noting that jury lenity . . . has been recognized by courts and commentators as the "jury's historic function, in criminal trials, as a check against arbitrary or oppressive exercises of power by the Executive Branch").

McNeal, 426 Md. at 471-72, 44 A.3d at 992. More recently, though, in State v. Stewart, 464 Md. 296, 303-04, 211 A.3d 371, 375-76 (2019) (plurality op.), we explained that the

reason for distinguishing between factually inconsistent verdicts and legally inconsistent verdicts is the "concern that a court not intrude on the jury's factfinding function while also ensuring that the jury has not taken the law into its own hands." (Footnote omitted).

Finally, it is worth noting that Maryland Criminal Pattern Jury Instruction 2:00A, concerning the binding nature of instructions, provides, in relevant part:

> Members of the jury, the time has come to explain the law that applies to this case. The instructions that I give about the law are binding upon you. In other words, you must apply the law as I explain it in arriving at your verdict. On the other hand, any comments that I may have made or may make about the facts are not binding upon you and are advisory only. You are the ones to decide the facts and apply the law to those facts.

MPJI-Cr 2:00A (2d ed., 2020 Repl.).

### Analysis

Here, we unequivocally hold that, despite the circumstance—and our recognition—that jury nullification sometimes occurs, jury nullification is not authorized in Maryland and a jury does not have the right to engage in jury nullification. Indeed, no case, statute, or rule in Maryland authorizes or gives juries the right to engage in jury nullification, *i.e.*, there is no grant of authority permitting a jury to nullify. Instead, Maryland case law makes plain that it is improper for an attorney to argue jury nullification to a jury, and that jury instructions about the law are binding and that trial courts advise juries as much. When requested, during *voir dire*, a trial court must ask whether any prospective jurors would be unwilling or unable to comply with the jury instructions on specific fundamental principles. Moreover, a verdict achieved via jury nullification is akin to the return of legally inconsistent verdicts in that a jury acts contrary to a trial court's instructions as to the proper

- 35 -

application of the law and in both instances that is impermissible.  Collectively, these principles of law lead to the conclusion that jury nullification is not a practice that is authorized in Maryland.  Taking our cue from the United States Supreme Court in <u>Sparf</u> and the Second Circuit (and other Federal courts), we agree that although a jury may have the inherent ability or power to nullify, it "is just that—a power; it is by no means a right or something that a [trial court] should encourage or permit if it is within [the court's] authority to prevent."  <u>Thomas</u>, 116 F.3d at 615.  In Maryland, a jury is required to determine the facts and render a verdict based on the instructions on the law provided to it by the trial court.

We hold that, in this case, the circuit court did not abuse its discretion when, in response to the second and third jury notes about jury nullification, it instructed the jury, among other things, that: jury nullification is a juror's knowing and deliberate rejection of the evidence or refusal to apply the law; it could not engage in jury nullification; jury nullification is contrary to the law and engaging in it would violate the jury's oath; and jury nullification would violate the court's order and the jury must apply the law as instructed by the court.

We begin by turning to the definition of "jury nullification."  The term is not defined by Maryland case law, statute, or rule.  In addition to the definition set forth in Black's Law Dictionary, the Second Circuit has discussed jury nullification as "the intentional disregard of the law as stated by the presiding judge[,]" and stated that jury nullification "is, by definition, a violation of a juror's oath to apply the law as instructed by the court— in the words of the standard oath administered to jurors in the federal courts, to 'render a

true verdict according to the law and the evidence.'" Thomas, 116 F.3d at 608, 614 (cleaned up). See also United States v. Fattah, 914 F.3d 112, 148 (3d Cir. 2019) ("[N]ullification—a juror's refusal to follow the law—is a violation of the juror's sworn oath to render a verdict according to the law and evidence." (Citing Thomas, 116 F.3d at 614-18)). From our perspective, neither definition is wrong. Jury nullification plainly encompasses a jury's refusal to follow the law whether that refusal be based on a reason related to the jury's sense of justice, morality, or fairness, or otherwise. Consistent with the definition set forth by the Second Circuit, we conclude that jury nullification involves a refusal to apply the law as explained by the trial court, see Thomas, 116 F.3d at 608, and a jury may not withdraw or retreat from, *i.e.* nullify, its obligation to follow a court's instructions on the law for any reason.

With the definition of jury nullification in mind, we observe that, to be sure, Maryland case law acknowledges the reality that jury nullification occurs, but our case law unmistakably holds that a party may not argue jury nullification to a jury and that instructions as to the law are binding on the jury. That this Court and the Court of Special Appeals have discussed or mentioned jury nullification because at times it occurs, though, is far removed from either court having authorized or sanctioned the practice.

For instance, in Chambers, 337 Md. at 51, 650 A.2d at 730, in considering the propriety of a mercy instruction in a criminal case, this Court commented, in *dicta*, that juries "always have the ability to nullify the application of the criminal law to a particular defendant." This statement is no more than an acknowledgment of the reality that jury nullification occurs because juries have the ability on their own without the imprimatur or

authorization of the Court to reach a verdict for reasons other than those that are based on the applicable law.  In <u>Chambers</u>, this Court did not state in any manner whatsoever that jury nullification is authorized or that it occurs under the auspices of relevant case law or any other authority.  Indeed, beyond the observation referenced above, this Court offered no additional comment on jury nullification and the case did not involve the resolution of any issue as to jury nullification.  Although we acknowledged that it occurs, *i.e.*, that a jury has the ability to nullify, we did not approve the use of jury nullification or otherwise state that a jury has a right to engage in jury nullification.

Notwithstanding that this Court has acknowledged that jury nullification occurs, existing case law leads to the inescapable conclusion that jury nullification is not authorized.  Our case law makes clear that counsel may not argue or encourage a jury to engage in jury nullification.  In <u>Blackwell</u>, 278 Md. at 478-80, 365 A.2d at 552-53, this Court held that a trial court properly sustained an objection to defense counsel's opening statement that essentially encouraged the jury to engage in jury nullification.[17]  And, we expressly disapproved of the notion of jury nullification, stating that Maryland law does not give a jury "untrammeled discretion" to "ignore clearly existing law as whim, fancy, compassion or malevolence should dictate[.]"  <u>Blackwell</u>, 278 Md. at 479, 365 A.2d at 553 (cleaned up).  It would, of course, create an inexplicable dichotomy within our case law if this Court were to hold that, although trial counsel may not argue jury nullification, a jury is authorized to engage in the practice.

---

[17]Likewise, in <u>Thomas</u>, 29 Md. App. at 52, 349 A.2d at 388-89, the Court of Special Appeals held that closing argument seeking to encourage jury nullification was improper.

That counsel may not argue jury nullification to a jury makes sense in light of the meaning of the term and the binding nature of a trial court's instructions as to the law. Counsel—or a trial court—would run afoul of this Court's holdings that jury instructions about the law are binding if counsel were permitted to argue that a jury should disregard the trial court's instructions and refuse to apply the law as provided to it by the trial court. As Stevenson, 289 Md. at 180, 423 A.2d at 565, and Montgomery, 292 Md. at 91, 437 A.2d at 658, plainly hold, and as we reiterated lately in Kazadi, 467 Md. at 8-9, 44, 223 A.3d at 559, 579, jury instructions about the law are binding and a trial court may not instruct a jury to the contrary—i.e., that its instructions as to the law are advisory only (not binding) and that the jury is free to disregard the law. If instructions about the law are binding on the jury, and trial counsel may not argue the opposite to a jury and a trial court may not instruct a jury otherwise, it follows that a jury is not free to engage in jury nullification and refuse to apply the law because it disagrees with the law in some respect.

Moreover, in Montgomery, 292 Md. at 91, 437 A.2d at 658, we held that "certain bedrock characteristics" of the American criminal justice system are binding guidelines of due process that the jury must adhere to, including the presumption of innocence, the State's burden of proof, and the defendant's right not to testify. Indeed, the importance of these fundamental principles to a fair jury trial in a criminal case resulted in this Court holding, in Kazadi, 467 Md. at 9, 223 A.3d at 559, "that, on request, during *voir dire*, a trial court must ask whether any prospective jurors are unwilling or unable to comply with the jury instructions on the fundamental principles of presumption of innocence, the State's burden of proof, and the defendant's right not to testify." It would not only be inconsistent

with case law concerning the binding nature of a trial court's instructions on the law for this Court to hold that jury nullification is authorized, but it would also conflict with the Court's recent determination in <u>Kazadi</u>, <u>id.</u> at 49, 223 A.3d at 559, that, when requested, a trial court is required to ask *voir dire* questions aimed at determining whether jurors are willing and able to comply with the court's jury instructions concerning fundamental principles. Holding that a jury could engage in jury nullification and disregard a trial court's instructions on fundamental principles would be to vary from our conclusion in <u>Kazadi</u>, that a juror is required to comply with instructions on the presumption of innocence, the burden of proof, and the defendant's right not to testify. Put simply, it would be inconsistent with existing case law—namely, our holdings in <u>Stevenson</u>, <u>Montgomery</u>, and <u>Kazadi</u>—for us to hold today that jury nullification is permissible or authorized in Maryland, thereby sanctioning the practice of juries knowingly and deliberately disregarding or refusing to apply the law, as instructed by the trial court. That a jury has the ability to nullify and that jury nullification sometimes occurs does not mean that jury nullification is consistent with, or authorized by, Maryland law.

Our holding that jury nullification is not authorized in Maryland is also supported by the principle that legally inconsistent verdicts are not permitted. As we explained in <u>McNeal</u>, 426 Md. at 458, 44 A.3d at 984, legally inconsistent verdicts involve a jury acting "contrary to the instructions of the trial judge with regard to the proper application of the law[,]" *i.e.*, the jury fails to act in accord with a trial court's instructions on the law. (Citation omitted). One of the reasons for the prohibition against legally inconsistent verdicts is to "ensur[e] that the jury has not taken the law into its own hands." <u>Stewart</u>,

464 Md. at 303-04, 211 A.3d at 375-76 (footnote omitted). If a jury had the right to disregard its instructions on the law, *i.e.*, to engage in jury nullification, the prohibition against legally inconsistent verdicts would be meaningless because a jury would be free to return legally inconsistent verdicts in contradiction to jury instructions and the proper application of the law as provided to it by the trial court. Stated otherwise, permitting jury nullification could result in a defendant being convicted of an offense and acquitted of another offense that is an element of the offense of conviction. This is the very circumstance that is precluded by the prohibition of legally inconsistent verdicts. Certainly, the circumstance that legally inconsistent verdicts are not permitted in Maryland informs the conclusion that jury nullification is likewise not permitted, even if it happens to occur from time to time without authorization.

Based on our existing case law, and in accord with Federal case law and the case law of the many States that do not condone the practice of jury nullification, we conclude that jury nullification is neither authorized nor sanctioned in Maryland. Indeed, after the Supreme Court's holding in Sparf, Federal courts have generally recognized a jury's responsibility to apply the law to the facts and that jury nullification instructions are not to be given. See, e.g., Drefke, 707 F.2d at 982. Likewise, numerous States have concluded that jury nullification, although occurring, should not be legitimized in instructions to the jury, see Partner, 180 Cal. App. 3d at 186, and is not an approved function of the jury and should not be encouraged by a trial court, see Goetz, 532 N.E.2d at 1274. From our perspective, these jurisdictions have the approach that is most consistent with our interpretation of Article 23 of the Maryland Declaration of Rights and our existing case

law, and this is the view that best ensures the overall integrity of the jury trial process in criminal cases. That a jury has the ability or power to engage in jury nullification, in secrecy, does not mean that jury nullification is authorized or sanctioned. Authorizing a jury to engage in jury nullification would pose a risk to equal justice under law, as jury nullification can occur for any reason, benevolent or otherwise, and indeed nullification could result for some in less than fair and equal treatment under the law.

Unlike some of the States using a different approach, nothing in Maryland law grants trial courts the authority to advise juries about jury nullification or otherwise provides for the giving of a jury nullification instruction or its equivalent. Different than Maryland, New Hampshire has a jury instruction that is described as the equivalent of a jury nullification instruction, the Wentworth instruction, which advises that if the State has proven all of the elements of an offense beyond a reasonable doubt, a jury "should" find the defendant guilty, leaving open the possibility that the jury may not find the defendant guilty. Paris, 627 A.2d at 589 (emphasis omitted); Paul, 104 A.3d at 1059 (emphasis omitted). There has never been such a corollary in Maryland law—no case, statute, rule, or pattern instruction sets forth or authorizes the giving of a jury nullification instruction or an instruction that could be deemed a jury nullification instruction.

Turning to the circuit court's instructions in this case in response to the second and third notes about jury nullification, we conclude that the circuit court did not abuse its discretion in giving the instructions that it did. We examine each instruction. In response to the second note about jury nullification, asking the circuit court for a yes or no response to the jury nullification question, the circuit court instructed the jury as follows:

Jury nullification, a juror's knowing and deliberate rejection of the evidence or refusal to apply the law, that's considered jury nullification. And the answer is no, you can't have jury nullification. You have to decide this case based on the evidence as you find it and apply the law as I gave it to you.

You decide the facts, the weight of the evidence, you, the 12, then you apply the law. To say you can do jury nullification would be a miscarriage of justice because there'd be no reason reading you the law and no reason you considering the evidence. And that wouldn't make sense would it? You are the only ones that weigh the evidence. You decide what weight you want to give it, what you find.

Once you get to where you are with the evidence, you take the law as I give it to you, you put it together and apply it and try and reach a verdict. So, your decision is going to be made on the evidence, applying your common sense, your past life experiences and you're going to take the law and apply it to all of that. So, nullification shouldn't even be a consideration. It's not on the verdict sheet. It's not in the instructions. Okay, I think I've said enough on that.

As an initial point, the circuit court's statements that "you can't have jury nullification" and that the jury had "to decide this case based on the evidence as you find it and apply the law as I gave it to you" are correct statements of the law. As explained above, the circuit court's instructions on the law are binding on the jury.

As to the circuit court's definition of jury nullification, consistent with the discussion above, we conclude that it was not incorrect. The circuit court's definition is the same definition as set forth in Black's Law Dictionary, albeit not the full definition from Black's Law Dictionary. To the extent that the specific definition provided in the first paragraph of the circuit court's instruction did not include the part of the definition that explains why a jury would engage in jury nullification, from our perspective, this is of no consequence. At bottom, as explained by the Second Circuit and discussed above, jury nullification involves the intentional disregard of the law as provided by the trial judge. See Thomas, 116 F.3d at 608. Moreover, reading the circuit court's instruction in its

totality demonstrates that the circuit court correctly advised the jury that it was to consider the evidence, weigh the evidence, and make a decision based on the evidence.

Also, that the full definition of jury nullification from Black's Law Dictionary was not given is not significant here because there is no indication that the portion of the definition not given by the circuit court applied to the circumstances of the case. Although the jury inquired about jury nullification, there is no indication in this case that the jury was motivated by a desire to reject evidence or not follow the law based on a sense of justice, morality, or fairness. As the State pointed out at oral argument, this was not a strong case for the belief that a jury would reject evidence or refuse to apply the law for the reasons described in the definition of jury nullification set forth in Black's Law Dictionary. In this case, Respondents, along with other men, were charged with home invasion, kidnapping, and armed robbery offenses that occurred as they held a family, including a child, in an apartment overnight, slashed one of the victims, and threatened to hurt the child. Although the jury inquired about nullification, it is not clear from the jury's questions that any member of the jury was motivated to find the defendants not guilty because of an individual sense of justice. Stated otherwise, it is not apparent that the portion of the definition from Black's Law Dictionary not given by the circuit court was in any way relevant to the case or had any bearing on the jury's questions. It is just as likely that the jury inquired about nullification because the jury had not reached a unanimous verdict or a member of the jury was eager to leave. But more importantly, even if the jury sought to avoid applying the law based on its own sense of justice, morality, or fairness, that would not have changed the circumstance that the circuit court gave the correct

response that jury nullification is not permitted. The facts of a case play no role in how a court should respond to a note asking about jury nullification.

We do not read the circuit court's instruction as advising the jury that it could not reject the State's evidence and that the jury was required to find Respondents guilty. Rather, read in totality, the circuit court's instruction stressed the jury's role in considering the evidence and in making a decision based on the evidence. The entirety of the instruction, and the emphasis the circuit court placed on the jury's role with respect to considering the evidence, negates the argument that the jury could have interpreted the definition of jury nullification as prohibiting it from rejecting evidence that the State presented at trial.

In response to the third note about jury nullification, the circuit court instructed the jury:

> Ladies and gentlemen of the jury you may not use, implement or resort to jury nullification. It is improper, it's contrary to the law [and] would be a violation of your oath to truly try and reach a verdict according to the evidence, which you all took that oath. Furthermore, nullification would violate this Court's order and it's the law of Maryland that "you must apply the laws I explained it in arriving at your verdict," sincerely me. I'll give you a copy of that.

We discern no abuse of discretion as to this instruction. The instruction contains an accurate statement of the law concerning jury nullification and was given in response to the last of three notes from the jury or an individual juror asking increasingly specific questions about jury nullification. The circuit court had already given progressive responses to the first two notes, first advising the jury that its verdict must be based solely on the evidence and to reread the jury instructions. In response to the second question, the

circuit court advised the jury that jury nullification could not be applied and should not be a consideration. Not satisfied with the circuit court's answer, Juror Number 112 sent a note asking why there is a legal definition of the concept of jury nullification if there is no legal circumstance permitting nullification and asked the court to cite the law that prohibited nullification. It was under this circumstance that the circuit court for the first time took the measure of telling the jury in response to a specific question about the law that prohibited jury nullification that using jury nullification would be a violation of the jury's oath and the court's order and that the jury must apply the law as it was explained to it. Given that the circuit court had already provided two increasingly detailed responses to specific questions about jury nullification (the jury must base its verdict on the evidence and jury nullification is not available), when presented with a third question asking whether any law prohibits jury nullification, the circuit court accurately responded, and indeed had little choice but to respond, that the oath taken by the jury (which includes that the jury shall render a verdict based on the evidence)[18] and the court's order to apply the law as instructed

---

[18]When the jury was sworn in, the clerk of the court asked: "You and each of you do solemnly promise and declare that you shall well and truly try and a true deliverance make between the State of Maryland, Bobby Johnson, Dalik Oxely, and Gary Sayles who shall you have in charge and a true verdict give according to the evidence?" The jury responded: "I do." And, after reciting the charges, the clerk stated as follows:

> Upon this indictment they hath been arraigned, upon their arraignment they hath pleaded not guilty and for their trial have put themselves upon the country, which country you are so that your charge is to inquire whether they be guilty of the matters whereof they stand indicted or not guilty. If guilty you will say so. If not guilty you will say so and no more. Ladies and gentlemen of the jury, are you all sworn? Please respond.

The jury responded in the affirmative.

prohibit jury nullification.  For all of these reasons, we conclude that the circuit court did not abuse its discretion in responding to the second and third notes on jury nullification.

## II.

### The Parties' Contentions

The State contends that the Court of Special Appeals incorrectly concluded that the circuit court's instructions about jury nullification prejudiced Respondents and required reversal.  The State maintains that the circuit court's responses to the second and third jury notes were accurate statements of the law and, in particular, there is no indication that the response to the third note prejudiced Respondents by coercing the jury's verdict.  Among other things, the State points out that, contrary to the Court of Special Appeals's determination, the jury did not render its verdict "soon" after the circuit court's response to the third note about nullification.  Rather, according to the State, more than twenty-four hours passed between the circuit court's response to the third note and the jury's verdict.

Respondents counter mainly that the Court of Special Appeals was correct in holding that the circuit court erred and that such error was not harmless because it prejudiced them.  Respondents also argue that the circuit court's instructions resulted in unfair prejudice and were coercive because the instructions threatened the jury with perjury and contempt, and, in addition, the instructions stated jury nullification is contrary to the law, leading the jury to believe that under the circuit court's definition of jury nullification, it was unable to reject evidence.

### Law

In general, an appellate court may conclude that a trial court abused its discretion in

giving a supplemental jury instruction, even if the instruction was a correct statement of the law, was generated by the evidence, and was not fairly covered by the initial jury instructions, where the instruction prejudices the defendant. See, e.g., Cruz v. State, 407 Md. 202, 204, 963 A.2d 1184, 1186 (2009) ("The [trial] court's supplemental instruction, though generated by the evidence, was not appropriate . . . because defense counsel's reliance on the [trial] court's pre-closing argument instructions resulted in prejudice to" the defendant.). For example, in Bircher, 446 Md. at 461, 482, 132 A.3d at 294, 306, this Court concluded that a trial court did not abuse its discretion in giving a supplemental jury instruction on transferred intent after the jury asked a question during deliberations about the term "intent" "because the evidence generated the instruction and the instruction did not prejudice" the defendant.

In Butler v. State, 392 Md. 169, 171-72, 896 A.2d 359, 361 (2006), this Court held that a trial court improperly addressed the jury in response to a jury note "in such a way that the defendants may have been denied their right to a fair trial[.]" One of the defendants was charged with possession with intent to distribute a controlled dangerous substance and related charges. See id. at 171, 896 A.2d at 360. At trial, much of the State's case rested upon testimony of a law enforcement officer who was an undercover agent and participated in an operation focused on arresting street-level drug dealers. See id. at 172-73, 896 A.2d at 361-62. During deliberations, the trial court received a note from the jury that stated: "We have one juror who does not trust the police no matter the circumstance." Id. at 176, 896 A.2d at 363. In response to the note, the trial court instructed the jury as follows:

Madam Forelady, ladies and gentlemen we received two notes from you.

> . . . The second note we're essentially going to ignore. It says we have one juror who does not trust the police no matter the circumstance. Anybody who had felt that way should have said so in voir dire so a challenge could have occurred, and if anybody deliberates with that spirit now, I suggest they might be violating their oath.

Id. at 178, 896 A.2d at 364 (emphasis omitted). One defendant's counsel objected to the instruction and the other defendant's counsel moved for a mistrial on behalf of both co-defendants, arguing that the trial court's instruction had not been requested by the parties and had a "chilling effect" on the juror. Id. at 178-79, 896 A.2d at 364-65 (emphasis omitted). Counsel argued that the trial court "scolded that juror[.]" Id. at 179, 896 A.2d at 365. The trial court denied the motion. See id. at 179, 896 A.2d at 365. The jury resumed deliberations and found one of the defendants guilty on all counts and found the other defendant guilty on all conspiracy counts. See id. at 179, 896 A.2d at 365.

On review, we observed that a "judge's actions need not be intentional to inappropriately influence the jury." Id. at 182, 896 A.2d at 367. We explained that the instruction given by the trial court was problematic:

> As gentle as the admonishment may have appeared to the judge, it may have carried great weight in the minds of the jurors (especially the mind of the juror who allegedly held certain views about police officers) who may be very susceptible to a judge's words and instructions. Furthermore, the judge acknowledged that his purpose in making the statement was to advise the juror to "rethink her legal obligation." Such "rethinking" could have led the juror to put aside his or her firmly held opinion and to vote with the majority even if the juror retained his or her prior position in respect to his or her disbelief of the police either in general or in the instant case.

Id. at 182, 896 A.2d at 367. We noted that, "in urging that juror to consider setting aside his or her opinion as to the credibility of the police, the judge in effect may have compromised the well[-]recognized principle that the credibility of witnesses is entirely

- 49 -

within the province of the trier of fact, i.e., the jury in th[e] case." Id. at 182-83, 896 A.2d at 367 (citation omitted). We concluded that it was "possible for a juror to infer from the trial judge's comment . . . that the juror was obligated to put aside his or her own judgment or risk violating his or her oath and face the consequences of such a violation." Id. at 186, 896 A.2d at 369. In our view, it was "difficult to imagine that the juror" described in the jury note "would not have been placed in some discomfort or consider that the comment might be suggesting that he or she should abandon his or her conscientious position." Id. at 186-87, 896 A.2d at 370 (cleaned up). Ultimately, we concluded that the trial court's "comment, made during jury deliberations . . . , was potentially coercive and, as a result, [the defendants] may have been denied their constitutional right to a fair trial." Id. at 192, 896 A.2d at 373.

**Analysis**

In this case, having decided that jury nullification is not authorized in Maryland and that the circuit court did not abuse its discretion in responding to questions from the jury concerning jury nullification, we now turn to the question of prejudice. In light of the Court of Special Appeals's determination that, in addition to the circuit court's instructions being inaccurate, the instructions caused "probable prejudice," Sayles, 245 Md. App. at 162, 226 A.3d at 369, we address the issue. We conclude that the circuit court's instructions about jury nullification did not prejudice Respondents. We disagree with Respondents that the circuit court's instructions in response to the second and third questions were coercive. To be sure, in responding to the third note, the circuit court advised the jury that engaging in jury nullification would be contrary to the oath that jurors

take and the court's order. It cannot be fairly said, though, that this language gave rise to an inference that a juror could be punished for engaging in jury nullification. In neither instruction did the circuit court state that a juror could be punished for engaging in jury nullification, either by being charged with perjury or contempt or in some other manner. Indeed, in its instructions, the circuit court never mentioned punishment, prosecution, or that any consequence would befall the jury if it engaged in jury nullification. The record reveals that the jury was capable of—and did—send follow-up notes, specifically, the second and third notes on jury nullification, and other notes when it wanted clarification of matters it was concerned about. We observe that the jury did not send a follow-up note requesting clarification about any possible repercussions for engaging in jury nullification.

Moreover, like the State, we observe that the jury did not render its verdict immediately, or even soon, after the circuit court's instruction in response to the third note about jury nullification. Instead, the record demonstrates that the jury continued to deliberate the afternoon of August 30, 2018, after receiving the third instruction on jury nullification, and most of the following day, August 31, 2018, before returning its verdict. In that period of time, not only did the jury continue to deliberate, but it also continued to send various notes to the court, including multiple notes indicating that it was deadlocked. The lapse in time between the circuit court's instruction in response to the third note about jury nullification (which was received at 9:35 a.m. on August 30, 2018) and the verdict (which was taken sometime after 4:03 p.m. the next day) and the notes sent by the jury, including the note indicating it was deadlocked, support the conclusion that the jury was not coerced by the court's instructions on jury nullification into reaching a verdict.

Respondents' reliance on Butler for the proposition that the circuit court's instruction in response to the third note was coercive is unpersuasive. In Butler, 392 Md. at 176, 178, 896 A.2d at 363, 364, in response to the jury note advising that one juror did not trust the police under any circumstances, the trial court pointedly singled out the juror who allegedly held such views by advising that that juror should have disclosed as much during *voir dire* and warning that if "anybody" was deliberating in that spirit, the juror "might be violating their oath." (Emphasis omitted). The trial court's instruction not only singled out the juror at issue, but also urged the juror to set aside his or her opinion as to credibility, a matter that is clearly within the province of the trier of fact. See id. at 182-83, 896 A.2d at 367.

By contrast, here, the circuit court did not chastise or criticize any juror's views or suggest that the juror who had signed the note (Juror Number 112) had single handedly violated the juror's oath. The circuit court's instructions in response to the second and third jury notes were directed to the entire jury ("you, the 12," and "[l]adies and gentlemen of the jury[,]" respectively). Nor did the circuit court's instructions advise or urge the jurors to abandon any opinions or positions with respect to considering and weighing the evidence or the credibility of the witnesses. In fact, in response to the second jury note, the circuit court did the opposite—it emphatically instructed the jury about its role in deciding the facts, weighing the evidence, and applying the law as instructed. And, in response to the third jury note, the circuit court advised the jury as a whole, without suggesting or implying the prospect of punishment, that engaging in jury nullification, *i.e.*, refusing to apply the law as instructed, was contrary to its oath, that oath being to "truly try

and reach a verdict according to the evidence[.]" In other words, the circuit court advised that the prospect of the jury engaging in nullification would be contrary to the oath to truly try the case; whereas, in <u>Butler</u>, the trial judge advised a specific juror that deliberating with views that should have been disclosed, in the past, during jury selection was a violation of the juror's oath. In our view, the circuit court's instructions in this case are a far cry from the pointed admonishment that the trial court gave in <u>Butler</u> and do not rise to the level of potential coercion that we perceived in <u>Butler</u>.

## CONCLUSION

In closing, we pause briefly to offer some guidance to trial courts on how to handle questions from a jury about jury nullification. When asked whether a jury may engage in jury nullification, a trial court should respond in much the same manner that the circuit court in this case responded to the first note about jury nullification—by advising the jury that its verdict must be based solely on the evidence, that the jury should reread the instructions previously provided, and that, based on the evidence, the jury should return a verdict of not guilty or guilty. But, if asked specifically whether there is authority or the right to engage in jury nullification in Maryland, a trial court must respond in the negative and advise that jury nullification is not authorized, *i.e.*, that a jury does not have the right to engage in jury nullification, and explain that there is no authority for the jury to decide the case on a basis other than the evidence presented and the law as instructed. That is exactly what the circuit court here did. We conclude that the circuit court correctly responded to the jury notes about jury nullification and the circuit court's instructions were not coercive or otherwise prejudicial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTION TO CONSIDER REMAINING ISSUES BEFORE THE COURT. RESPONDENTS TO PAY COSTS IN THIS COURT.**

Circuit Court for Montgomery County
Case Nos. 132381C, 132377C, 132379C
Argued: December 4, 2020

IN THE COURT OF APPEALS

OF MARYLAND

Nos. 15, 16, & 17

September Term, 2020

_____

STATE OF MARYLAND
v.
KARON SAYLES

_____

STATE OF MARYLAND
v.
BOBBY JAMAR JOHNSON

_____

STATE OF MARYLAND
v.
DALIK DANIEL OXLEY

_____

Barbera, C.J.,
McDonald,
Watts,
Getty,
Hotten,
Booth,
Biran,

JJ.

_____

Dissenting Opinion by Hotten, J.

_____

Filed: January 29, 2021

Respectfully, I dissent. Our justice system empowers juries to acquit a defendant no matter how apparently convincing the evidence of guilt. A jury verdict is final. *United States v. Ball*, 163 U.S. 662, 671, 16 S. Ct. 1192, 1195 (1896). Jury nullification occurs when a jury exercises its unassailable power to acquit, even when the jury "had *no right* to exercise [the power]." *Standefer v. United States*, 447 U.S. 10, 22, 100 S. Ct. 1999, 2007 (1980) (quoting *Dunn v. United States*, 284 U.S. 390, 393, 52 S. Ct. 189, 190 (1932)) (emphasis added). The trial court erred by instructing the jury that it cannot use nullification, because juries have the power to nullify, notwithstanding any contrary right or authority. I am persuaded that this erroneous jury instruction constituted an abuse of discretion, and I would affirm the judgment of the Court of Special Appeals.

### *Juries Have the Power to Nullify a Verdict*

Jury nullification describes the power of juries to disregard the facts and law when reaching a verdict. This Court, along with other jurisdictions who have confronted the issue, acknowledge nullification as an inherent power of juries. *Chambers v. State*, 337 Md. 44, 51, 650 A.2d 727, 730 (1994) ("[Juries] always have the ability to nullify the application of the criminal law to a particular defendant."); *see also* Teresa L. Conaway, Carol L. Mutz & Joann M. Ross, *Jury Nullification: A Selective, Annotated Bibliography*, 39 Val. U. L. Rev. 393 (2004). There is a fine, but decisive, distinction between recognizing the power of nullification and encouraging the exercise of nullification. A trial court cannot instruct juries to ignore the facts or the law. *Unger v. State*, 427 Md. 383, 388 n.2, 48 A.3d 242, 244 n.2 (2012) ("[A] judge's instructions to the jury concerning the burden of proof, the presumption of innocence, proof beyond a reasonable doubt, and other

matters implicating federal constitutional requirements, must be binding upon the jury.").

It is equally a misstatement of the law for the trial court to instruct juries that they do not have the power to nullify. *Sparf v. United States*, 156 U.S. 51, 74, 15 S. Ct. 273, 282 (1895) ("[Juries] have the physical power to disregard the law, as laid down to them by the court. But I deny that, in any case, civil or criminal, they have the moral right to decide the law according to their own notions or pleasure.") (citation omitted).

The power of jury nullification has a venerable history in American law. In 1670, jurors refused to follow a judge's instruction to convict William Penn. British attempts to control colonial juries provided "one of the grievances that led to the Declaration of Independence." *United States v. Krzyske*, 857 F.2d 1089, 1094-95 (6th Cir. 1988) (Merritt, J., dissenting) (citing Scheflin & Van Dyke, *Jury Nullification: The Contours of a Controversy*, 43 L. & Contemp. Probs. 51, 56-58 (1980)). The practice gained additional notoriety in colonial America during the case of John Peter Zenger, when the jury acquitted Zenger following his attorney's explanation that the jury had a right "beyond all dispute to determine both the law and the fact[s.]" Wayne R. LaFave et al., Criminal Procedure, 6 Crim. Proc. § 22.1(g) (4th ed. Dec. 2020) (quoting A Brief Narration of the Case and Trial of John Peter Zenger 78 (J. Alexander ed. 1963)).

The Supreme Court has noted that it is "beyond cavil" that the Zenger case "had to be in the minds of the Framers[.]" *Jones v. United States*, 526 U.S. 227, 247, 119 S. Ct. 1215, 1226 (1999); *see also* Wayne LaFave & Jerold Israel, Criminal Procedure § 24.7(a) (2d ed. 1992) (recognizing arguments that the power of jury nullification is grounded in the constitution).

Maryland has codified the power and autonomy of the jury in its constitution. *See e.g.,* Samuel K. Dennis, *Maryland's Antique Constitutional Thorn*, 92 U. Pa. L. Rev. 34 (1943) (discussing the history and application of the jury's power of nullification in Maryland). While this Court has curtailed the jury's power to disobey the trial court's instructions, it has never abrogated the longstanding historical power of Maryland juries to nullify. The power of jury nullification in Maryland remains alive today. Paul Mark Sandler & Matthew A.S. Esworthy, *Jury Nullification – A Quixotic Theory, Part II*, in Raising the Bar: Practice Tips and Trial Technique for Young Maryland Lawyers (Paul Mark Sandler and the Maryland Institute for Continuing Professional Education of Lawyers, Inc. eds., 2006) ("While the jury's right to judge the law in criminal cases has been eroded, it will never completely disappear. Jury nullification will always exist in a practical sense because it is, at its core, a doctrine grounded in the essential power granted to jurors to issue verdicts based on their unique responses to trials.").

The power of jury nullification in Maryland and throughout the United States has drawn both praise and criticism. On the one hand, it can serve as a tool in achieving positive, social outcomes. Paul Butler, *Racially Based Jury Nullification: Black Power in the Criminal Justice System*, 105 Yale L.J. 677, 679 (1995) ("the black community is better off when some nonviolent lawbreakers remain in the community rather than go to prison. . . . Legally, the doctrine of jury nullification gives the power to make this decision to African-American jurors who sit in judgment of African-American defendants."). On the other hand, it can also disrupt the administration of justice. John W. Bissel, *Comments on Jury Nullification*, 7 Cornell J.L. & P. 51, 51 (1997). Regardless of whether the exercise

3

of the power is right or wrong, the legal scholarship acknowledges the jury's inherent power to do so.

### *The Trial Court Erroneously Instructed the Jury That It Cannot Use Jury Nullification*

The trial court denied the jury's power of nullification at a pivotal moment in the trial. The jury sent several notes reflecting that it struggled to reach consensus. The jury asked the court, "[d]o we have the right to use jury nullification of a charge?" An hour later, the jury asked, "can you answer the jury nullification question with a yes or no response?" The trial court responded with an incorrect statement of law, "the answer is no, you can't have jury nullification."

By stating that the jury *cannot* resort to jury nullification, the trial court's instruction disregarded the recognized power of juries to nullify verdicts in Maryland. The instruction conflated the jury's obligation to render a verdict and obey court instructions with its fundamental power to nullify. A jury *can* nullify a verdict, notwithstanding the trial court's binding instruction to apply the law as given.

### *A Jury Instruction Contrary to the Law Constitutes an Abuse of Discretion*

A trial court abuses its discretion when it incorrectly states the law in a jury instruction. *Carroll v. State*, 428 Md. 679, 689, 53 A.3d 1159, 1164 (2012). The incorrect statement on jury nullification constituted an abuse of discretion. Such an error warrants reversal. *Rotwein v. Bogart*, 227 Md. 434, 436, 177 A.2d 258, 259-260 (1962) ("the lower court's ruling may be reversed if clearly erroneous or an abuse of judicial discretion.").

The trial court could have avoided misstating the law by not commenting on whether the jury can resort to nullification. The trial court could have encouraged the jury

4

to continue deliberating without having to explore the subject of nullification. Alternatively, the trial court could have reemphasized to the jury that they must apply the law as provided by the trial court and they are not legally authorized to disobey the trial court's instructions. If the jury nonetheless decides to exercise the power of nullification, the trial court has not articulated an incorrect statement of law, nor has it sanctioned the practice.

The Court of Special Appeals has also cited *United States v. Sepulveda*, 15 F.3d 1161 (1st Cir. 1993) as another example of a trial court's deft response to a jury question about nullification:

> [T]rial judges are forbidden to instruct on jury nullification, because they are required to instruct only on the law which applies to a case. As I have indicated to you, the burden in each instance which is here placed upon the Government is to prove each element of the offenses . . . beyond a reasonable doubt, and in the event the Government fails to sustain its burden of proof beyond a reasonable doubt as to any essential element of any offense charged against each defendant, it has then failed in its burden of proof as to such defendant and that defendant is to be acquitted. In short, if the Government proves its case against any defendant, you should convict that defendant. If it fails to prove its case against any defendant you must acquit that defendant.

*Sayles v. State*, 245 Md. App. 128, 160, 226 A.3d 349, 368 (2020) (quoting *Sepulveda*, 15 F.3d at 1189-90) (ellipses in original). This response, as noted by the Court of Special Appeals, addressed the jury's inquiry without encouraging nor prohibiting jury nullification. It underscored the jury's obligation of finding the defendant guilty, if the government proved its case beyond a reasonable doubt, or of acquitting the defendant, if the government failed in meeting its burden.

The unadulterated power of juries to reach a verdict, including acquittal in the face of evidence beyond a reasonable doubt, is a constitutionally protected feature of our justice system. *Sullivan v. Louisiana*, 508 U.S. 275, 277, 113 S. Ct. 2078, 2080 (1993) ("'fundamental to the American scheme of justice' . . . [is] the jury, rather than the judge, reach the requisite finding of 'guilty.'"). Trial courts should not insinuate otherwise in instructing a jury.

## CONCLUSION

Admittedly, the inherent power of a jury to nullify a verdict generates an uncomfortable tension with a jury's binding obligation to apply the law as provided by the trial court. The trial court erred in its instruction by conflating the fine, but vital, distinction between a jury's power to nullify and its authority to nullify.

For these reasons, I dissent and would affirm the judgment of the Court of Special Appeals.

6